UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREA BULEY,

    Plaintiff,

v.                                     Case No: 8:15-cv-1882-T-27MAP

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation of the Magistrate Judge (Dkt. 18), recommending that the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income be affirmed. Plaintiff filed objections (Dkt. 19), to which the Commissioner did not respond. A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review. *Id.*; FED. R. CIV. P. 72(b)(3).

After a *de novo* review of the findings to which objections are made, and a review of the findings to which objection is not made for plain error, I agree with the Magistrate Judge that the ALJ applied the correct legal standards and his decision is supported by substantial evidence. Accordingly, the objections are overruled, the Report and Recommendation is adopted, and the Commissioner's decision is affirmed.

## I. PLAINTIFF'S OBJECTIONS

Plaintiff makes three objections in response to the Magistrate Judge's Report and Recommendation: (1) the ALJ failed to weigh the opinion of Dr. Rosenblum, a consultive ophthalmologist; (2) the ALJ rejected the opinion of Dr. Kim, one of Plaintiff's treating physicians, without good cause; and (3) the ALJ made negative findings regarding Plaintiff's credibility that are not supported by substantial evidence. (Dkt. 19).

## II. STANDARD

The ALJ's decision is reviewed to determine whether the correct legal standards were applied, *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam), and if the decision as a whole is supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks and citations omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (internal quotation marks and citations omitted). Legal conclusions of the ALJ, however, are reviewed *de novo*. *Ingram v. Commissioner of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III. DISCUSSION

There is a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The first three steps evaluate whether (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment or combination of impairments, and (3)

the impairment meets or equals the severity of the specified impairments in the Listing of Impairments. *Id.* The fourth step asks whether, based on the claimant's residual functional capacity ("RFC") assessment, the claimant can perform any of his past relevant work despite the limitations caused by his impairments. *Id.* At the fourth step, the ALJ considers "all the relevant medical and other evidence" in the case record to determine the claimant's RFC. *Phillips*, 357 F.3d at 1238 (quoting 20 C.F.R. § 404.1520(e)). The final step evaluates whether there are significant numbers of jobs in the national economy the claimant can perform, given her RFC, age, education, and work experience. *Winschel*, 631 F.3d at 1178.

The ALJ found, as to steps one and two, that Plaintiff had not been engaged in substantial gainful activity and she had severe impairments including "degenerative disc disease of the cervical and lumbar spines; scoliosis; history of left leg fracture, with rodding; migraine headaches; and, bilateral laser eye surgeries, with residual corneal scarring." (Dkt. 14-2 at pp. 33). Plaintiff has no objections relating to the findings and analysis at the first or second steps. (Dkt. 19). Rather, Plaintiff objects to sections of the Magistrate Judge's report addressing the ALJ's determination, at steps three and four, that her impairments do not meet or medically equal the severity of listed impairments and that she had the RFC to perform light work with some specific restrictions. (Dkts. 14-2 at pp. 34-37; Dkt.19). Plaintiff challenges the ALJ's findings on three issues.

### A.   *The ALJ's Findings Relating to Dr. Rosenblum, Consultive Ophthalmologist*

Plaintiff's first objection to the Report and Recommendation asserts that the ALJ did not "specifically address" and determine what weight to give to the opinion by a consultative ophthalmologist, Dr. Rosenblum, that "she is unable to perform tasks that require good binocularity and depth perception." (Dkt. 19 at p. 2). An ALJ must "state with particularity the weight given to different medical opinions, and the reasons therefore." *Winschel*, 631 F.3d at 1179. The ALJ's

3

findings relating to Dr. Rosenblum's opinion are as follows:

> Martin Rosenblum, M.D., performed a consultative ophthalmological examination. He, too, noted a history consistent with that described above, as well as recent treatment for corneal scarring. On examination, the claimant exhibited 20/25- far vision and 20/20 near vision in the right eye. She had 20/80 far vision and 20/20 near vision in the left eye. Her visual field remained intact. Dr. Rosenblum indicated that the claimant was 'visually compromised,' but not legally blind (Exhibit 9F). The undersigned agrees and finds that the claimant remains capable of work requiring no more than frequent binocular visual acuity or depth perception.

(Dkt. 14-2 at p. 36).

Plaintiff's objection is not well-founded. Not only did the ALJ "specifically address" Dr. Rosenblum's opinion, he agreed with it. (Dkt. 14-2 at p. 36). Having agreed with Dr. Rosenblum's opinion, the ALJ found Plaintiff capable of "no more than frequent binocular visual acuity or depth perception." (Dkt. 14-2 at p. 36). The ALJ's express agreement with Dr. Rosenblum's opinion indicates that he attributed great weight to the opinion. Accordingly, the Magistrate Judge properly concluded that "the ALJ did not err in failing to specifically opine about the weight assigned to the particular sentence in his report that Plaintiff singles out." (Dkt. 18 at p. 4).

This is not a situation where an ALJ makes findings based on the opinions of "nonexamining, nontreating physicians," even though "[t]he opinions of all of the treating and examining physicians support the contrary finding," as was the situation in the case relied upon by Plaintiff. *See Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). Dr. Rosenblum's opinion is consistent with the other evidence relating to Plaintiff's visual impairments and supports her allegation that her visual impairments limit her ability to work.[1] The ALJ relied on Dr. Rosenblum's opinion in finding that

---

[1] The ALJ also cited records from "Mitchell R. Petit, O.D., and others at LasikPlus" showing Plaintiff's complaints of vision deficits, dizziness, and chronic headaches from 2007 to 2014. There was also evidence of Plaintiff's two laser eye surgeries in her right eye and three surgeries in her left eye. Considering this evidence together with Dr. Rosenblum's opinion, the ALJ found that "[h]e, too, noted a history consistent with that described . . . as well as recent treatment for corneal scarring." (Dkt. 14-2 at p. 36).

4

the occupations available to Plaintiff were limited by her visual impairment. Because Plaintiff's assertion that the ALJ did not specifically address Dr. Rosenblum's opinion is incorrect, her first objection is overruled.

### B.     *The ALJ's Findings Relating to Dr. Kim, Treating Physician*

Plaintiff's second objection is that the ALJ rejected the opinion of Dr. Kim, one of her treating physicians, without good cause. (Dkt. 19 at pp. 3-4). The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) ("[A]bsent 'good cause,' the opinion of a claimant's treating physician must be accorded 'substantial' weight."). " '[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.

"With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1240-41). The ALJ " 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.' " *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

The record evidence includes Dr. Kim's medical records from her treatment of Plaintiff and a statement that Dr. Kim prepared in September 2014. (Dkt. 14-2 at pp. 36-37). Plaintiff asserts that the ALJ improperly disregarded Dr. Kim's opinion that Plaintiff has "persistent neck and back pain, with difficulties bending for long periods, [and] lifting more than ten pounds"; erred in finding that Dr. Kim's treatment was "conservative and not indicative [of] disabling problems, and the clinical

signs/findings themselves are unimpressive"; and erred in finding that "Dr. Kim's assessment, including her indication that the claimant needs a cane when walking, is much too generous." (Dkt. 14-2 at p. 37; Dkt. 19 at p. 3). The ALJ rejected only the September 2014 opinion offered by Dr. Kim, not Dr. Kim's records from her treatment of Plaintiff. (Dkt. 14-2 at pp. 36-37).

Review of the ALJ's decision shows that he clearly articulated his reasons for disregarding Dr. Kim's opinion. The ALJ found that Dr. Kim's opinion offered in September 2014 was inconsistent with her own treatment records for Plaintiff. *See Phillips*, 357 F.3d at 1241. Dr. Kim's treatment records "noted complaints of pain," but "failed to identify any abnormal clinical signs/findings." The records showed no evidence "of difficulties ambulating or performing fine/gross manipulations with the upper extremities." Dr. Kim also did not offer "any form of treatment more aggressive than mere medications" during her treatment of Plaintiff. (Dkt. 14-2 at p. 36).

There is other evidence contradicting Dr. Kim's opinion. *See Phillips*, 357 F.3d at 1241. The records of two other treating physicians were inconsistent with Dr. Kim's September 2014 opinion. (Dkt. 14-2 at p. 36). Dr. Kim also opined that Plaintiff made no income and therefore did not have the ability to purchase health insurance. (Dkt. 14-2 at p. 37). The ALJ found this opinion inconsistent with Plaintiff's tax records, and that this inconsistency "further suggest[ed] that Dr. Kim relied in part on the subjective reporting of claimant." (Dkt. 14-2 at p. 37). After reviewing the contradictory evidence, the ALJ summarized his findings as to Dr. Kim's September 2014 opinion:

> Overall, the Administrative Law Judge gives this opinion little to no weight. To reiterate, the care administered by Drs. Kim, Le, and Williams is conservative and not indicative [of] disabling problems, and the clinical signs/findings themselves are unimpressive. Dr. Kim's assessment, including her indication that the claimant needs a cane when walking, is much too generous, and not consistent as well with her appearance at the hearing without one.

(Dkt. 14-2 at p. 37).

The ALJ's stated reasons for rejecting Dr. Kim's September 2014 opinion are sufficiently specific, and are not contradicted by the other medical evidence cited by Plaintiff. (Dkt. 19 at p. 3). Plaintiff points to her records of spinal issues, which the ALJ also acknowledged, but this objective medical evidence, standing alone, does not show how the ALJ's position on Dr. Kim's opinion is incorrect. (Dkt. 19 at pp. 3-4). The specific findings by Dr. Shefsky and Dr. Le that Plaintiff discusses are likewise not indicative of error because the ALJ made his conclusions after considering all of Dr. Shefsky and Dr. Le's findings, and the other available evidence, as a whole. (Dkt. 14-2 at pp. 36-37). In short, the ALJ weighed all of the evidence in reaching his conclusions, and he stated valid reasons for his limited rejection of Dr. Kim's September 2014 opinion.

The ALJ did not impermissibly step into the shoes of a physician by finding that Plaintiff's history of treatment was "conservative" or by relying on his own observations of Plaintiff. (Dkt. 19 at p. 4; Dkt. 14-2 at p. 37). The ALJ noted the following facts, among others, before concluding that Plaintiff's treatment was conservative: the lack of "any abnormal clinical signs/findings," the lack of a "record of difficulties ambulating or performing fine/gross manipulations with the upper extremities," and the fact that none of her treating physicians prescribed "any form of treatment more aggressive than mere medications." (Dkt. 14-2 at p. 35). The authority cited by Plaintiff itself refers to treatments short of surgery as "conservative," so it was not error for the ALJ to conclude that Plaintiff had a conservative treatment history based on the evidence before him. *Freeman v. Schweiker*, 681 F.2d 727, 728 (11th Cir. 1982) (per curiam).

As for Dr. Kim's opinion that Plaintiff needed a cane to walk, the ALJ was entitled to rely on his own observations at the hearing as contradictory evidence on this limited, observable issue. *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985) (noting an ALJ may consider personal observations of claimants in evaluating symptoms). In the parlance of the *Freeman* opinion, this is

7

an instance where the "ALJ merely attempted to match the observable symptoms against the testimony," not one where the ALJ attempted to make a comprehensive medical assessment about issues that are not readily observable. *See Freeman*, 681 F.2d at 731 (holding that it was improper for an ALJ to conclude, based on his observations of the claimant, that the claimant did not appear to be in constant pain and that the claimant "exaggerated his symptoms"). It was not improper for the ALJ to conclude that Dr. Kim's opinion about Plaintiff's need for a cane was incorrect when he observed her having no apparent difficulty walking without one.

The ALJ specifically articulated his reasons for rejecting Dr. Kim's September 2014 opinion, namely the contradictory evidence of Dr. Kim's own treatment records, Plaintiff's other medical records, other opinions from treating and consultative physicians, and the ALJ's comparison of Plaintiff's observable symptoms against Dr. Kim's opinions about Plaintiff's observable symptoms. Plaintiff's citation to certain parts of her medical records and of other physicians' opinions do not show that the ALJ's reasons are error, because the evidence viewed as a whole supports the ALJ's findings. Because the ALJ rejected Dr. Kim's opinion for good cause based on contradictory evidence, Plaintiff's second objection is overruled.

### C.   *The ALJ's Findings Relating to Plaintiff's Credibility*

Plaintiff's final objection to the Report and Recommendations asserts that the ALJ's findings relating to her credibility are not supported by substantial evidence. (Dkt. 19 at pp. 4-6). Plaintiff takes issue with the ALJ's findings, as she sees them, that her "tax returns did not explain why [she] took no salary in multiple years," her "pay prior to the alleged onset date was discretionary," and she "had adequate income to purchase health insurance." (Dkt. 19 at p. 4).

The extent of the ALJ's discussion in the Decision relating to Plaintiff's income and tax returns is as follows:

8

> At the outset, the undersigned notes the claimant's Social Security earnings record. This shows nominal earnings since 2011 (Exhibit 3D). In 2011, the earnings were apparently through a business the claimant owned and operated (Andrea's Tattoos, L.L.C.), and her subsequent earnings since 2012 are from self-employment in that business (Exhibit 4D). However, at hearing, the claimant testified that she had owned and operated her own tattoo parlor since 2006. At Exhibit 7D, the claimant submitted tax returns for 2006 through 2014, though these do not explain why the claimant took no salary in many of these years. This is despite the fact that, in many of these years, the claimant also took in gross receipts of $20,000.00 to $30,000.00 (Exhibit 7D). Thus, one could reasonably infer that, from 2006 to 2010, the claimant was working and generating some type of income. For whatever reason, she chose not to assign any of this income to herself as salary. The claimant even admitted that she continued to work *after* the alleged onset date (Exhibit 1E), so there is no way of being assured whether she returned to similar bookkeeping methods. Her pay prior to the alleged onset date appears completely discretionary.

(Dkt. 14-2 at p. 34). The only other consideration the ALJ's Decision gave to Plaintiff's tax returns occurs when the ALJ cites the tax returns as evidence contradicting Dr. Kim's opinion that Plaintiff had no income:

> Dr. Kim further advocated that the claimant does not make an income resulting in an inability to purchase health insurance. This is inconsistent with the claimant's tax records further suggesting that Dr. Kim relied in part on the subjective reporting of the claimant.

(Dkt. 14-2 at p. 37). The ALJ, therefore, did not dedicate "considerable time" to the issue of Plaintiff's tax returns in his Decision, as Plaintiff asserts. (Dkt. 19).

There is substantial evidence to support the ALJ's minimal findings relating to Plaintiff's tax returns. Plaintiff's contentions that the ALJ found her to be "not fully truthful with her tax returns" or "felt that she was too cheap to buy health insurance" read too much into the ALJ's decision. (Dkt. 19 at p. 6). At most, it appears the ALJ found that Plaintiff's gross receipts listed in her tax returns indicated that she had a personal income from being self-employed at her business even though she did not assign any of the business income to herself as salary, and that her payments to herself from her business income were therefore discretionary. Rather than insinuating that Plaintiff was being

9

untruthful with her tax returns, the ALJ's analysis indicates he struggled with determining whether she was self-employed and worked at her business based on his review of her bookkeeping and tax returns. Plaintiff's explanation of her tax situation in her objection dives too deeply into issues the ALJ never reached, (Dkt. 19 at p. 5), because the purpose of the ALJ's undertaking was simply to answer the question whether, during the years preceding her claim, Plaintiff "was working and generating some type of income," (Dkt. 14-2 at p. 35).

As for the ALJ's finding that Dr. Kim's opinion was inconsistent with Plaintiff's tax returns, it appears that he focused on Dr. Kim's statement that Plaintiff did not make an income, and not the statement that Plaintiff could not afford insurance. This reading of the ALJ's statements about Dr. Kim's opinion and Plaintiff's tax returns is supported by the fact that there are no other references to Plaintiff's ability to afford health insurance in the Decision. (Dkt. 14-2). While a claimant's ability to work, as indicated by income in the years preceding a claim, is relevant to the disability analysis, a claimant's ability or inability to afford health insurance is not.

Even if the ALJ's findings related to Plaintiff's tax returns had been erroneous, the Magistrate Judge correctly determined that this would be harmless error. It is clear that the ALJ focused on Plaintiff's conservative treatment history, the fact that she "continued to work *after* the alleged onset date," and recent consultative examinations when he concluded that "claimant's allegations of disabling pain secondary to neck and back issues, as well as disabling headache pain, is [sic] not supported by the record evidence." (Dkt. 14-2 at 35-37). Any findings relating to Plaintiff's tax returns and income, beyond the finding that Plaintiff was capable of earning an income, did not affect the ALJ's ultimate determination that Plaintiff's allegation of suffering from disabling pain was not credible. *Jones v. Commissioner of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (per curiam) (holding an ALJ's erroneous failure to include all of the claimant's impairments

in a hypothetical to a vocational expert was harmless error because it did not affect the outcome of the case). For these reasons, Plaintiff's third objection is overruled.[2]

IV. **CONCLUSION**

Plaintiff's Objections are **OVERRULED**. The Report and Recommendation (Dkt. 18) is **APPROVED** and **ADOPTED** as the opinion of the Court for all purposes, including for appellate review. The decision of the Commissioner is **AFFIRMED**. The Clerk is directed to **ENTER JUDGMENT** in favor of Defendant pursuant to 42 U.S.C. § 405(g). The Clerk is directed to **CLOSE** the file.

**DONE AND ORDERED** this 3rd day of March, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[2] Plaintiff makes no objections relating to the ALJ's findings at step four and step five of the analysis. (Dkt. 19). The ALJ found that Plaintiff had the RFC to perform light work with additional restrictions, Plaintiff had no past relevant work, and there are a significant number of jobs available in the national economy that Plaintiff can perform. (Dkt. 14-2 at pp. 36-8). The ALJ committed no plain error at these steps.

11